## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES GANDY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-1883 |
| | § | |
| DANIEL BURTON, Trustee, | § | |
|     Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff James Gandy sued Defendant Daniel Burton, Trustee, for contractual indemnity for a lawsuit filed against Gandy in Texas state court.  The case is now before the Court on Defendant's Motion for Summary Judgment ("Defendant's Motion") [Doc. # 26], to which Plaintiff filed a Response and Cross-Motion for Partial Summary Judgment ("Plaintiff's Motion") [Doc. # 27], Defendant filed a Combined Reply in Support of his own Motion and Response in Opposition to Plaintiff's Motion [Doc. # 29], and Plaintiff filed a Reply [Doc. # 30].  Having carefully reviewed the full record and applied governing legal authorities, the Court **grants** Defendant's Motion and **denies** Plaintiff's Motion.

## I.    <u>BACKGROUND</u>

In May 2007, American General Life Insurance Company ("American General") issued two insurance policies insuring the life of William G. Thames, Sr.

to Defendant Burton, as Trustee of The William G. Thames Irrevocable Trust ("Trustee").  Shortly thereafter, Trustee and American General agreed to convert the two policies to a different insurance policy form.  In the Fall of 2008, Trustee and American General agreed to convert the two policies back to the original form.  In connection with this reformation of the policies back to the original form, American General infused additional cash into the policies and Trustee signed an Indemnity Agreement as to each policy.  In the Indemnity Agreements, the Trustee agrees to indemnify and defend certain parties, including American General and Plaintiff, from and against any claims asserted "in connection with" American General's issuance and reformation of the life insurance policies which results in a claim by or on behalf of "an interested party" in the policies.  *See* Indemnity Agreements, Exh. A to Defendant's Motion, ¶ 1.  The Indemnity Agreements provide further that a condition precedent to a party's right to be indemnified is that the party give "notice in writing as soon as practicable of any claim" for which the party seeks indemnification.  *See id.*

Plaintiff Gandy was an agent of American General under an Agent Contract, which provides that Plaintiff agrees to repay to American General any unearned commissions.  At the time of the reformation of the Thames policies, Plaintiff entered into a Special Commission Agreement ("SCA") with American General.  The SCA

provided that if the insurance policies insuring Thames's life were terminated for any reason before "new policy year five," Plaintiff would be required to refund to American General all or a portion of the first year commissions paid to him based on the policies. *See* SCA, Exh. B to Defendant's Motion. Neither the Agent Contract nor the SCA contains a provision requiring Trustee to indemnify Plaintiff Gandy.

Trustee surrendered the policies in 2010. Plaintiff refused to refund the commissions to American General, and American General sued Plaintiff in Texas state court. American General asserted that Plaintiff Gandy breached both the Agent Contract and the SCA.

Plaintiff then filed this declaratory judgment action, seeking a declaration that Trustee owes him a defense and indemnity under the Indemnity Agreements. The parties filed cross-motions for summary judgment, which have been fully briefed and are now ripe for decision.

## II.   <u>APPLICABLE LEGAL STANDARDS</u>

### A.   <u>Standard for Summary Judgment</u>

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The

moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. *See Hines v. Henson*, 293 F. App'x. 261, 262 (5th Cir. 2008) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004)). The Court construes all facts and considers all evidence in the light most favorable to the nonmoving party. *Nat'l Union*, 532 F.3d at 401.

### B.   Legal Standard for Contract Interpretation

"Contract interpretation, including the question of whether the contract is ambiguous, is a legal question. *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 428 (5th Cir. 2003). "The court's primary concern is to give effect to the written expression of the parties' intent." *Id.* The Court should consider "all parts of the contract together to ascertain the agreement of the parties, ensuring that each provision of the contract is given effect and none are rendered meaningless." *Id.*

The Court is to interpret the terms of an unambiguous contract as a matter of law. *Gonzales v. Denning,* 394 F.3d 388, 392 (5th Cir. 2004); *MCI Telecomm. Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). "If the written instrument

is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 677 (Tex. 2005).  A contract is not ambiguous simply because the parties disagree about its interpretation.  *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 728 (Tex. 2001).   The terms of an unambiguous contract are enforced as written without considering parol evidence for the purpose of creating an ambiguity or giving the contract  a different meaning. *David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 450 (Tex. 2008).

## III.   ANALYSIS

### A.   Failure to Give Timely Notice

The Indemnity Agreements provide that an "Indemnified Party shall, as a condition precedent to its right to be indemnified under this Agreement, give the Indemnitor notice in writing as soon as practicable of any claim made against such Indemnified Party for which indemnification will or could be sought under this Agreement." *See* Indemnity Agreements, ¶ 1. The Indemnity Agreements require that the notice be in writing.  *See id.*, ¶ 4.

It is undisputed that Plaintiff Gandy failed to give written notice as required by the Indemnity Agreements until May 4, 2012, almost a full year after American General filed its lawsuit against him on May 10, 2011.  This lengthy delay is not "as

soon as practicable" under Texas law.  *See SingleEntry.com, Inc. v. St. Paul Fire & Marine Ins. Co.*, 117 F. App'x 933, 936-37 (5th Cir. 2004) (nine months is not "as soon as practicable"); *see also Fed. Ins. Co. v. CompUSA, Inc.*, 239 F. Supp. 2d 612, 615 (N.D. Tex. 2002) (noting that there is ample authority that taking 11 months to notify the indemnitor is not "as soon as practicable" under Texas law).  As a result, Plaintiff Gandy failed to provide written notice to Trustee as soon as practicable as required by the Indemnity Agreements.

Gandy argues that his failure to comply with the notice provision does not preclude indemnity because Trustee cannot demonstrate actual prejudice from the delay.  The Indemnity Agreements provide clearly and unambiguously that the notice requirement is a "condition precedent" to the right to claim indemnity.  In support of his argument that Trustee must prove prejudice, Gandy cites *PAJ, Inc. v. The Hanover Ins. Co.*, 243 S.W.3d 630, 636-37 (Tex. 2008), and other cases involving indemnity in the insurance policy context.[1]  In standard, non-insurance indemnity agreements,

---

[1]     It appears that the holding in *PAJ* is limited not only to indemnity provisions in insurance policies, but is further limited to "occurrence" policies and does not apply to "claims-made" policies.  *See PAJ*, 243 S.W.3d at 636 (citing *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 (5th Cir. 1999)).  In *Matador*, the Fifth Circuit applying Texas law, held that "courts do not always require a showing of prejudice in order for an insurance company legitimately to deny coverage where the insured fails to comply with an insurance policy's notice provisions."  *Matador*, 174 F.3d at 658.  The Fifth Circuit then distinguished between "occurrence" policies (which cover the insured for acts or omissions that occur within the policy period) and "claims-made" polices (which cover the insured only for claims

however, the law in Texas is that "if an express condition is not satisfied, then the party whose performance is conditioned is excused from any obligation to perform." *Solar Applications Eng'g, Inc. v. T. A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010). As a result, Trustee is not required to show actual prejudice in order to avoid indemnity based on Gandy's failure to comply with the "condition precedent" of timely written notice.

Gandy failed to provide written notice "as soon as practicable" and the Indemnity Provisions require timely written notice as a "condition precedent" to indemnity. Under Texas law outside the "occurrence" insurance policy context, if an express condition precedent to indemnity contained in an indemnity agreement is not satisfied, the indemnitor is excused from the indemnity obligation. On this basis, Trustee is entitled to summary judgment that he does not owe Gandy a defense or indemnity.

### B.   "Interested Party"

The Indemnity Agreements provide indemnity for certain claims "by or on behalf of any beneficiary of, or any interested party in, the Old Policy or New Policy."

---

made during the policy period). The Fifth Circuit held that, under Texas law, "Courts strictly interpret notice provisions in a 'claims-made' policy [and] an insurance company may deny coverage under a 'claims-made' policy without a showing of prejudice." *Id.* at 659.

*See* Indemnity Agreements, ¶ 1.  In the state court lawsuit, American General sued Gandy, its agent, for breach of the Agent Contract and the SCA.  Gandy argues in this declaratory judgment suit that American General is an "interested party" in the Policies and that the claims asserted against him in the state court lawsuit, therefore, fall within Trustee's indemnity obligation.  The Court concludes from the unambiguous language in the Indemnity Agreements that American General is not an "interested party" in the Policies.

The contract construction doctrine *expressio unius est exclusio alterius* instructs that the naming of one thing excludes another.  *See CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987); *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 206 (5th Cir. 1996). American General is specifically defined and referred to in the Indemnity Agreements, including in the "Indemnification" paragraph, as the "Company."  *See* Indemnity Agreements.  The Company is not, however, listed as a party whose claims against "the Company or any other Indemnified Party" would give rise to indemnity.  American General, the drafter of the Indemnity Agreements, specifically named beneficiaries and other interested parties, without naming the "Company," as entities who could assert certain claims that would give rise to Trustee's indemnity obligation.  It is clear that American General intended thereby to exclude "the Company" as an "interested party."

Additionally, adopting the construction urged by Gandy is illogical.  The Indemnity Agreement provides indemnity for claims asserted "against the Company" (or any other defined Indemnified Party) by or on behalf of "any beneficiary of, or any interested party in" the Policies.  Claims cannot be asserted "against the Company" by the Company.  As a result, the Company – American General – is not an "interested party" whose claims against "the Company or any other Indemnified Party" would be indemnified under the Indemnity Agreements.  Trustee is entitled to summary judgment on this basis also.

### C.    "In Connection With" Issuance or Reformation of Policies

The Indemnity Agreements provide indemnity for claims asserted "in connection with the Company's issuance of the Old Policy and reformation of the New Policy."  *See* Indemnity Agreements, ¶ 1.  Under Texas law, the words "in connection with" generally "define the scope of the area within which the indemnity provision is applicable."  *See Sun Oil Co. v. Renshaw Well Servs., Inc.*, 571 S.W.2d 64, 68 (Tex. Civ. App. – Tyler 1978, writ ref'd n.r.e.).  An indemnity provision is construed to "prevent the indemnitor's liability from being extended beyond the terms of the agreement."  *Id.*

In this case, the claims for which Plaintiff Gandy seeks indemnification from Trustee are based on Gandy's alleged breach of two separate contracts to which

Trustee is not a party.  Although the employment contracts between Gandy and American General may be tangentially related to the Policies, the claims by American General based on Gandy's alleged breach of those two employment contracts are not "in connection with" the actual issuance or reformation of the Policies.  There are no claims by American General against Plaintiff Gandy that are based on American General's "issuance of the Old Policy and reformation of the New Policy."  Instead, the claims by American General against Plaintiff Gandy are based on the **_surrender_** of the Policies and Plaintiff's refusal to return the commissions paid to him by American General.  These claims "in connection with" the surrender of the Policies, are not "in connection with" the issuance or reformation of the Policies.  The Court concludes that the claims asserted in the state court lawsuit, which involve the alleged breach of two separate employment-related contracts between American General and Plaintiff, are not claims "in connection with" the issuance or reformation of the Policies.

## IV.   <u>CONCLUSION AND ORDER</u>

Plaintiff failed to give timely written notice of the state law claims. Additionally, American General is not an "interested party" in the Policies for purposes of the Indemnity Agreements, and the state law claims in the lawsuit by American General against Gandy are not "in connection with" American General's

issuance or reformation of the Policies.  As a result, Plaintiff is not entitled to a defense or indemnity from Trustee.  It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 26] is **GRANTED** and Plaintiff's Cross-Motion for Partial Summary Judgment [Doc. # 17] is **DENIED**.  The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas this **13th** day of **June, 2013**.

_____
Nancy F. Atlas
United States District Judge